UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

HUSSEIN SHAKIR MANSOOR AL
HASANI,

               Petitioner,

    v.

TODD BLANCHE, et al.,

               Respondents.

Case No. C26-1871-SKV

ORDER GRANTING IN PART
PETITION FOR WRIT OF HABEAS
CORPUS

## I.     INTRODUCTION

Petitioner Hussein Shakir Mansoor Al Hasani, who is currently detained by U.S.

Immigration and Customs Enforcement (ICE) at the Northwest ICE Processing Center (NWIPC)

in Tacoma, Washington, brings this 28 U.S.C. § 2241 habeas action through counsel seeking

release from detention and injunctive relief.  Dkt. 1.  Respondents filed a return to the petition,

Dkt. 5, together with supporting declarations and exhibits, Dkts. 6-7, and Petitioner filed a reply,

Dkt. 8.  Now, having considered the parties' submissions and the governing law, the Court

GRANTS the petition in part, ORDERS that Petitioner be released from detention within twenty-

four (24) hours, and addresses the additional relief requested below.

/ / /

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 1

## II.   BACKGROUND

Petitioner is a native and citizen of Iraq, who entered the United States on August 18, 2014, as the child of a primary refugee.  Dkt. 6, ¶¶3-4.  Petitioner and his family fled Iraq due to threats to their life because their family members worked with the United States Embassy and military, and because they are Sunni Muslim.  Dkt. 1 at 7 & Exs. H-I.  Petitioner was adjusted to Lawful Permanent Resident status on May 18, 2016, which was retroactive to August 18, 2014. Dkt. 6, ¶5.

Petitioner has a criminal history.  He was arrested and convicted of crimes in 2016 and 2017, including petit theft and felony grand theft by possession of stolen property.  *See id*., ¶¶6-8 & Dkt. 7, Ex. 2 at 3.[1]  On February 18, 2018, after serving a jail sentence, Petitioner was taken into ICE custody.  Dkt. 6, ¶9.  On May 25, 2018, Petitioner was ordered removed to Iraq, but was granted withholding of removal and released on an order of supervision (OSUP).  *Id*., ¶10.

On December 7, 2020, Petitioner was convicted of unlawful possession of a firearm and sentenced to thirty six months of incarceration.  *Id*., ¶11.  On August 7, 2023, Petitioner was again taken into ICE custody.  *Id*., ¶12.  The Government filed, and an immigration judge granted, a motion to reopen and terminate withholding of removal.  *Id*., ¶¶12, 14.  On January 16, 2024, Petitioner was again ordered removed to Iraq, but was granted deferral of removal under the United Nations Convention Against Torture (CAT).  *Id*., ¶15; Dkt. 7, Ex. 3.  Both Petitioner and the Government waived appeal, *id*., making the order of removal administratively final as of January 16, 2024.  *See* Dkt. 5 at 3; Dkt. 8 at 2-3.  On January 25, 2024, nine days after that final order, Petitioner was released on an OSUP.  Dkt. 6, ¶16; Dkt. 7, Ex. 4.

---

[1] Respondents also assert an additional conviction for unlawful entry and exhibiting a deadly weapon, but that conviction is not mentioned in documentation submitted.  *See* Dkt. 7, Ex. 2 at 3.

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 2

On January 6, 2025, Petitioner was convicted of misdemeanor disturbing the peace and sentenced to 180 days of incarceration. Dkt. 6, ¶17. On September 3, 2025, the United States District Court for the District of Idaho found that Petitioner had violated the conditions of his supervised release (ostensibly for that criminal charge) and sentenced him to eight months of incarceration. *Id*., ¶18. On January 20, 2026, Petitioner was released from the Federal Detention Center in Washington, taken into ICE custody, and booked into NWIPC. *Id*., ¶19; Dkt. 7, Ex. 1.

Petitioner was served with a notice of revocation of his OSUP on January 24, 2026. Dkt. 6, ¶20; Dkt. 7, Ex. 5. On both March 9, 2026, and April 6, 2026, Petitioner was served with a Form I-229a, Warning for Failure to Depart, and an instruction sheet regarding the requirement to assist in removal. Dkt. 6, ¶¶21-22; Dkt. 7, Exs. 6-7. Respondents assert that, after service of the March 2026 warning, Petitioner indicated he would like to be removed to France or Switzerland, and was advised of his duty to cooperate with removal. Dkt. 6, ¶21. The Government also, on April 6, 2026, served Petitioner with a Notice of Removal to Canada. Dkt. 6, ¶22; Dkt. 7, Ex. 8.

Petitioner asserts that, on March 18, 20, and 23, 2026, he called the French, Australian, and Canadian embassies, but received no response. *See* Dkt. 1 at 9, 24-25. He filed his habeas petition with this Court on May 29, 2026. *See* Dkt. 1. Respondents assert that they subsequently, on June 14, 2026, sent a "Request for Acceptance of Alien to the Embassy of Canada." Dkt. 6, ¶23. They also assert that, while ICE Enforcement and Removal Operations (ERO) have not yet completed a travel document request for Petitioner, they "will take steps to effectuate [his] removal to Canada." *Id*., ¶24.

Petitioner asserts that he was subjected to severe physical violence by his father throughout his childhood, resulting in ongoing, serious mental-health issues. *See* Dkt. 1 at 7 &

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 3

Exs. H-I. He was also present when militia members in Iraq attacked and killed his father. *See id.* In addition to mental health issues, Petitioner suffers from Type 1 diabetes and requires daily insulin. *See id.* He depends on his family's support for his care. *See id.* All of Petitioner's family, including his mother, sister, grandparents, three uncles, and one aunt, are United States citizens who currently reside in the United States. *See id.* Petitioner is not aware of any direct family member who resides outside of the United States. *See id.* He has never been to Canada and has no family, community, or other ties to Canada. *See id.* at 3

### III.   LEGAL STANDARD

Federal courts have authority to grant writs of habeas corpus to individuals detained in "violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Yildirim v. Hermosillo*, No. C25-2696-KKE, 2026 WL 111358, at *1 (W.D. Wash. Jan. 15, 2026). "In habeas cases, federal courts have broad discretion in conditioning a judgment granting relief," *Lujan v. Garcia*, 734 F.3d 917, 933 (9th Cir. 2013), and may dispose of habeas matters "as law and justice require," 28 U.S.C. § 2243.

### IV.   DISCUSSION

Petitioner asserts that his current detention has become unlawfully indefinite under the framework articulated in *Zadvydas v. Davis*, 533 U.S. 678 (2001). Dkt. 1 at 24-25. He also asserts that his re-detention was contrary to the applicable federal regulations and therefore unlawful. *Id.* at 25. He seeks his release from custody, as well as injunctive relief barring any future re-detention without the Government first satisfying various criteria, and barring his removal to a third country without due process. *Id.* at 26. Respondents contend Petitioner's claim under *Zadvydas* fails, that his re-detention comported with both due process and agency regulations, and that his claims for injunctive relief should be denied. Dkt. 5 at 5-13.

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 4

For the reasons discussed below, the Court finds that *Zadvydas* compels Petitioner's release from immigration custody. The Court therefore does not reach Petitioner's remaining claims and otherwise addresses his requested relief below.

A.      Indefinite Detention Under *Zadvydas*

The INA expressly permits detention of noncitizens who were admitted to the United States but subsequently ordered removed during immigration proceedings. *See* 8 U.S.C. §§ 1225(b), 1226(a), 1226(c), 1231(a). Section 1231(a) governs the detention and release of noncitizens such as Petitioner who have been ordered removed, and it provides that the Department of Homeland Security (DHS) is required to detain a noncitizen during the 90-day "removal period." 8 U.S.C. § 1231(a)(2). After the removal period expires, DHS has the discretionary authority to continue to detain certain noncitizens or to release them on supervision. *See* 8 U.S.C. § 1231(a)(6). Although § 1231(a)(6) authorizes ICE to detain noncitizens beyond the initial 90-day window, it cannot do so indefinitely. *See Zadvydas*, 533 U.S. at 682.

In *Zadvydas*, the Supreme Court held that § 1231(a)(6) implicitly limits a noncitizen's detention to a period reasonably necessary to bring about that individual's removal from the United States. *See id.* at 701. The Supreme Court determined that it is "presumptively reasonable" for DHS to detain a noncitizen for six months following entry of a final removal order while it works to remove the individual from the United States. *Id.* "After this 6-month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the government must respond with evidence sufficient to rebut that showing." *Id.* If the government is unable to meet its burden,

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 5

then the noncitizen must be released from detention.  *See Jennings v. Rodriguez*, 583 U.S. 281, 299 (2018).

The parties here agree that Petitioner's removal order became final on January 16, 2024. *See* Dkt. 5 at 3; Dkt. 8 at 2-3.  The record further shows that Petitioner was initially detained for nine days after that final order of removal, and that his current period of detention began on January 20, 2026.  *See* Dkt. 6, ¶¶15, 16, 19; *see also* Dkts. 1 & 8.  Petitioner has, as such, now been detained beyond the six-month presumptively reasonable time period recognized in *Zadvydas*.[2]

The Court therefore turns to the question of whether Petitioner has shown good reason to believe there is no significant likelihood of his removal in the immediate future.  *See Zadvydas*, 533 U.S. at 701.  Petitioner here shows that his order of removal has been final for some two-and-a-half years, and that the Government has been unable to effectuate his removal during that time.  Given the deferral of removal under CAT, Petitioner cannot be returned to Iraq.  Further, Respondents have not obtained a travel document from any country, have not secured any country's agreement to accept Petitioner, and have not identified any timeline for his removal.  Also, while Respondents assert their intent to effectuate Petitioner's removal to Canada, *see* Dkt. 6, ¶24, they do not indicate Canada has accepted or even acknowledged a request for such removal, and Petitioner observes he is not a Canadian citizen, has never been to Canada, and has no family, community, or other ties to Canada, *see* Dkt. 1 at 3.  Petitioner has therefore shown good reason to believe there is no significant likelihood of his removal in the reasonably foreseeable future.

---

[2] The Court, for this reason, declines to address any issues raised by the parties with respect to the status of Petitioner's claim prior to the expiration of the six-month presumptively reasonable period of detention.

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 6

Respondents must respond with evidence sufficient to rebut Petitioner's showing. *See Zadvydas*, 533 U.S. at 701. Respondents here note that Petitioner fails to present any evidence that the Canadian embassy is unwilling to accept him or that ICE will not coordinate his removal with Canadian authorities. They note that they served Petitioner with a notice of removal on April 6, 2026, and, on June 14, 2026, sent a "Request for Acceptance" to the Canadian embassy. *See* Dkt. 6, ¶¶22-23; Dkt. 7, Ex. 8. They also assert that Petitioner has not been cooperative with ICE's efforts to remove him, pointing to the March and April 2026 warnings for failure to depart as demonstrating his failure to fully cooperate, Dkt. 6, ¶¶21-22; Dkt. 7, Exs. 6-7, and asserting his allegation of March 2026 calls to foreign embassies is unsupported in light of the subsequent, April 2026 warning.

Respondents fail to carry their burden. They do not, as an initial matter, properly fault Petitioner for failing to present evidence that Canada will not accept him. Nor do they submit any evidence showing Petitioner's removal to Canada is reasonably foreseeable. Although asserting they sent a Request for Acceptance to Canada, they do not provide a copy of that request and concede they sent it only after Petitioner filed his petition. Dkt. 6, ¶23. They also concede that ERO has yet to complete a travel document request for Petitioner. *See id*., ¶24. They do not put forth any evidence showing when the travel document request is likely to be submitted, when a travel document is likely to issue following submission of the request, or what the timeline for effectuating Petitioner's removal is likely to be once a travel document is obtained. They, instead, assert that "ERO will take steps to effectuate Petitioner's removal to Canada." *Id*., ¶24. Respondents' representations regarding the likelihood of Petitioner's removal therefore appear to rely solely on ERO's belief that it will be able to obtain a travel document to Canada at some point. As previously found by this Court, "general optimism that a

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 7

travel document might be acquired for Petitioner at some unspecified point in the future is insufficient to show Petitioner's removal is likely in the reasonably foreseeable future." *KC v. Blanche*, No. C26-1524-SKV, 2026 WL 1662700, at *4 (W.D. Wash. June 9, 2026) (citing *Nguyen v. Scott*, 796 F. Supp. 3d 703, 725 (W.D. Wash. 2025) ("Courts in this circuit have regularly refused to find Respondents' burden met where Respondents have offered little more than generalizations regarding the likelihood that removal will occur.")).

Respondents also fail to support their contention that Petitioner has not been cooperative. They point to warnings served on Petitioner, but do not explain how the mere fact that those warnings were issued show that Petitioner has been uncooperative. Respondents, in fact, acknowledge Petitioner's cooperation through his identification of two different countries to which he would like to be removed after he was served with the first warning. *See* Dkt. 6, ¶21. They also fail to explain how the issuance of a second warning refutes Petitioner's assertion that he called three different embassies in an effort to cooperate. Respondents do not identify any concrete action or inaction on Petitioner's part that would support the allegation of noncooperation, or connect any alleged noncooperation to any delay in Petitioner's removal. The Court does not, under these circumstances, find any basis for Respondents' assertion that Petitioner has not been cooperative. *See, e.g., Yukseloglu v. Bondi*, No. C26-0467-RSM, 2026 WL 617367, at *3 (W.D. Wash. Mar. 5, 2026) ("Although Respondents [accuse] Petitioner of noncooperation, this accusation is not tied to any concrete plan for removal to a specific country. This is not obstruction, it is blaming an asylum seeker for not having ties to third, fourth, or fifth countries."); *Kara v. Bondi*, No. C26-0105-JHC, 2026 WL 322772, at *4 (W.D. Wash. Feb. 6, 2026) ("The government's sworn declaration says that Petitioner 'refused to provide any third countries he would be willing to go to,' which does not amount to an affirmative

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 8

misrepresentation or refusal to apply for travel documents[.]") (internal and other citations omitted).

The Court, in sum, finds that Petitioner has shown there is no significant likelihood of his removal in the reasonably foreseeable future, that his detention has therefore become indefinite under *Zadvydas,* and that he is entitled to release.

B.        Remaining Claim and Requested Relief

The Court does not reach Petitioner's remaining claim that Respondents failed to comply with their own regulations because the requested relief is duplicative of that ordered under *Zadvydas*.  The Court therefore turns to Petitioner's request for injunctive relief.

Petitioner seeks orders governing any future re-detention and third country removal. First, he requests an order prohibiting the Government from re-detaining him without first "holding a hearing before a neutral decisionmaker at which Respondents bear the burden of establishing flight risk or danger to the community by clear and convincing evidence based on changed circumstances since Petitioner was previously released."  Dkt. 1 at 26.  Second, he requests an order prohibiting the Government from re-detaining him without first:  (1) obtaining a valid travel document to a third country; (2) providing that document to him and his counsel; (3) offering him the opportunity to leave on his own within two months; and (4) making concrete arrangements for him to be put on a flight to a third country in the reasonably foreseeable future. *Id.*  Third, and finally, he seeks an order prohibiting Respondents from removing or seeking to remove him to a third country without notice and meaningful opportunity to respond in compliance with the statute and due process in reopened removal proceedings.  *Id.*

A party seeking a permanent injunction "must demonstrate (1) that [he] has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 9

to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2008) (citations omitted). A party must show "some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)).

Petitioner does not meaningfully engage with the *eBay* factors in his petition or otherwise develop a sufficient factual record to support his request for injunctive relief. His request for injunctive relief is therefore denied without prejudice.

## V.    CONCLUSION

For the foregoing reasons, the Court GRANTS the habeas petition, Dkt. 1, in part and ORDERS that Petitioner be RELEASED from immigration detention within **twenty-four (24) hours** on conditions of supervision previously imposed. Respondents shall file a certification with the Court within **forty-eight (48) hours** that Petitioner has been released. Petitioner's remaining claim is denied as MOOT. Petitioner's requests for injunctive relief are DENIED.

Dated this 13th day of July, 2026.

S. KATE VAUGHAN
United States Magistrate Judge

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 10